CROWELL & MORING , LLP
William M. O'Connor, Esq.
woconnor@crowell.com
Evelyn H. Seeler, Esq.
eseeler@crowell.com
*Attorneys for Plaintiffs*
590 Madison Avenue
New York, New York 10022
(212) 223-4000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JITENDRA BHATIA, GOPAL BHATIA, KISHANCHAND BHATIA,  JAYSHREE BHATIA and MANDAKINI GAJARIA, | **ECF CASE** |
| Plaintiffs, | Civ. Action No. 09 CV 2410(LTS) |
| -against- | **COMPLAINT** |
| STANDARD CHARTERED INTERNATIONAL (USA ) LTD., STANDARD CHARTERED PLC, FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC, FAIRFIELD SENTRY, LTD., WALTER M. NOEL, JR., PETER SCHMID, JAN NAESS, ANDREAS PIEDRAHITA, JEFFREY H. TUCKER,  BRIAN FRANCOUER  and AMIT VIJAYVERGIYA, | |
| Defendants. | |

    Plaintiffs JITENDRA BHATIA, GOPAL BHATIA, KISHANCHAND BHATIA,

JAYSHREE  BHATIA and MANDAKINI GAJARIA, by and through their attorneys

CROWELL & MORING, LLP, respectfully allege as follows:

## NATURE OF THE ACTION

    1.    This action seeks redress for losses suffered by plaintiffs, customers of defendants

STANDARD CHARTERED INTERNATIONAL (USA) LTD. and STANDARD

CHARTERED PLC (collectively the "STANDARD CHARTERED Defendants"), as result of securities fraud violations and related common law infractions committed by Defendants in connection with investment by these banks in FAIRFIELD SENTRY LTD., a fund which improperly invested substantially all or a large portion of its assets with Bernard Madoff ("Madoff") and Bernard L. Madoff Investment Securities ("BMIS").

2.      On December 11, 2008. the United States Securities and Exchange Commission commenced an action in the United States District Court for the Southern District of New York against Madoff and BMIS, entitled *SEC v. Bernard L. Madoff and Bernard L. Madoff Investment Securities*, 08 Civ. 10791 (LLS) (the "SEC Complaint").

3.      As set forth in the SEC Complaint, Madoff and BMIS controlled billions of dollars in investments which supposedly earned stable returns when in fact the returns were fictitious and part of a giant Ponzi scheme.

4.      The STANDARD CHARTERED Defendants promoted FAIRFIELD SENTRY LTD. to Plaintiffs as having a "mythical status" for generating stable and steady returns with low volatility.

5.      The STANDARD CHARTERED Defendants represented to Plaintiffs that the FAIRFIELD DEFENDANTS operated highly sought after funds and that even though these funds were "closed end,"  the FAIRFIELD DEFENDANTS would take investments from the STANDARD CHARTERED INTERNATIONAL (USA) LTD. because of that bank's reputation.

6.      Most importantly, the STANDARD CHARTERED Defendants assured Plaintiffs that they had conducted extensive due diligence on FAIRFIELD SENTRY, LTD., recommending the investment and Plaintiffs relied on such assurances, reputation, and due diligence commitment promised by the STANDARD CHARTERED Defendants in making their investments.

7.      In February of 2009, the STANDARD CHARTERED Defendants admitted to Plaintiffs that they recommended the investment in FAIRFIELD SENTRY, LTD. without having conducted any of their own due diligence or investigations.

8.      This admission underscores that the STANDARD CHARTERED Defendants knowingly or recklessly made material misrepresentations and/or omissions to plaintiffs about the investments with FAIRFIELD SENTRY, LTD. in violation of the federal securities laws and common law fraud as well as provides the basis for Plaintiffs' additional claims.

9.      Plaintiffs losses resulted from the breach of fiduciary duty, gross negligence and unjust enrichment of  STANDARD CHARTERED INTERNATIONAL (USA) LTD. and STANDARD CHARTERED PLC by failing to exercise proper due diligence in the investment of Plaintiffs' funds in FAIRFIELD SENTRY, LTD., failing to follow Plaintiffs' direction and to properly redeem interests invested on behalf of Plaintiffs, as well as the wrongful conversion of Plaintiffs' funds and other damages caused by defendants FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH (BERMUDA) LTD, FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH ADVISORS, LLC and FAIRFIELD SENTRY, LTD., WALTER M. NOEL, JR., PETER SCHMID, JAN NAESS, ANDREAS PIEDRAHITA, JEFFREY H. TUCKER,  BRIAN FRANCOUER  and AMIT VIJAYVERGIYA (collectively the "FAIRFIELD Defendants").

10.     In addition, this action seeks redress for frauds relating to the STANDARD CHARTERED Defendants' failure to disclose to Plaintiffs the convertible nature of Plaintiffs' investment in certain bonds issued by Lloyds TSB, Lloyds TSB's announcement that it intended to convert the bonds purchased by Plaintiffs, and the fact that the bonds had been converted to preferred stock.  As a result of these material omissions, Plaintiffs suffered losses when their investment in a debt instrument was converted to equity, and had no opportunity to mitigate the losses by selling the bonds.

## JURISDICTION AND VENUE

11.     The securities claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78(a),  Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5 and the Investment Advisers Act, 15 U.S.C. § 80b-1 et seq.  The common law claims asserted herein arise out of the same transactions or occurrences giving rise to the securities claims.

12.     This Court has jurisdiction over this action pursuant to Section 27 of the Securities and Exchange Act, Section 214 of the Investment Advisers' Act and the supplemental jurisdiction of this court.  Defendants transact business in this district.  This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367.

13.     Venue is proper in this judicial district pursuant to Section 27 of the Securities and Exchange Act, Section 214 of the Investment Advisers Act and § 1391(b).  Substantial acts in furtherance of the alleged conduct and its effects have occurred within this district.  Defendants also conduct substantial business within this district.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange and/or markets.

## PARTIES

15.     Plaintiff JITENDRA BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in FAIRFIELD SENTRY, LTD.

16.     Plaintiff GOPAL BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD

CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in FAIRFIELD SENTRY, LTD.

17.     Plaintiff KISHANCHAND BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in FAIRFIELD SENTRY, LTD.

18.     Plaintiff JAYSHREE BHATIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested on behalf of such Plaintiff, funds in FAIRFIELD SENTRY, LTD.

19.     Plaintiff MANDAKINI GAJARIA is an individual residing in Dubai in the United Arab Emirates, who at all times hereinafter mentioned was an account holder with the STANDARD CHARTERED Defendants, as defined below, which invested, on behalf of such Plaintiff, funds in FAIRFIELD SENTRY, LTD.

20.     Defendant STANDARD CHARTERED  INTERNATIONAL (USA) LTD. is a successor in interest and name to American Express Bank, Ltd., and is a corporation organized under the laws of the State of Connecticut, with a principal place of business in New York, New York.

21.     Defendant STANDARD CHARTERED PLC is incorporated in the United Kingdom with limited liability under company number 966425, with a place of business in New York, New York, and is the parent corporation of STANDARD CHARTERED INTERNATIONAL (USA) LTD.

22.     Defendant FAIRFIELD GREENWICH GROUP is an informal collective name for the securities and investment advisory businesses of FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LTD. and FAIRFIELD GREENWICH

ADVISORS LLC and other associated entities transacts business in New York and has a principal of business in New York, New York.

23.     Defendant FAIRFIELD GREENWICH LIMITED is a company organized under the laws of the Cayman Islands, transacts business in the State of New York, has a principal place of business in New York and upon information and belief is the Placement Agent for FAIRFIELD SENTRY, LTD.

24.     Defendant FAIRFIELD GREENWICH (BERMUDA) LTD. is a corporation organized under the laws of Bermuda, transacts business in the State of New York, has a principal place of business in New York, and upon information and belief is a wholly owned subsidiary of FAIRFIELD GREENWICH LIMITED and the Investment Manager for FAIRFIELD SENTRY, LTD.

25.     Defendant FAIRFIELD GREENWICH ADVISORS LLC is a limited liability corporation organized under the laws of the State of Delaware, authorized to transact business in New York, has a principal of business in New York, New York, and upon information and belief is a wholly owned subsidiary of FAIRFIELD GREENWICH LIMITED and the provider of administrative services and due diligence to FAIRFIELD GREENWICH (BERMUDA) LTD.

26.     Defendant FAIRFIELD SENTRY, LTD. is an entity incorporated under the laws of the British Virgin Islands, which accepted funds for the purpose of investment, including investments with Madoff and BMIS.

27.     Defendant WALTER M. NOEL, JR. is an individual, who, upon information and belief, resides in New York, New York, and at all times hereinafter mentioned was, a director of FAIRFIELD SENTRY, LTD.  and  a founding partner and director of FAIRFIELD GREENWICH GROUP.

28.     Upon information and belief, Defendant PETER SCHMID is an individual who, at all times hereinafter mentioned, was a director of FAIRFIELD SENTRY, LTD., with an office address in the British Virgin Islands.

29.     Upon information and belief, Defendant JAN NAESS is an individual who, at all times hereinafter mentioned, was a director of FAIRFIELD SENTRY, LTD., with an office address in the British Virgin Islands.

30.     Defendant ANDREAS PIEDRAHITA is an individual who, upon information and belief resides in London, England and Madrid, Spain, and at all times hereinafter mentioned was, a founding partner and director of FAIRFIELD GREENWICH GROUP and an officer and director of  FAIRFIELD GREENWICH (BERMUDA) LTD.

31.     Defendant JEFFREY H. TUCKER is an individual who, upon information and belief resides in New York, New York and at all times hereinafter mentioned was, a founding partner of FAIRFIELD GREENWICH GROUP and a principal of FAIRFIELD GREENWICH (BERMUDA) LTD.

32.     Upon information and belief, Defendant BRIAN FRANCOUER is an individual who, at all times hereinafter mentioned, was a director of FAIRFIELD GREENWICH (BERMUDA) LTD., with an office address in Bermuda.

33.     Defendant AMIT VIJAYVERGIYA is an individual who, upon information and belief, resides in New York, New York and at all times hereinafter mentioned was, the Chief Risk Officer of FAIRFIELD GREENWICH GROUP and president and managing director of FAIRFIELD GREENWICH (BERMUDA) LTD.

## FACTUAL ALLEGATIONS

34.     In or about 1997, Plaintiffs JITENDRA BHATIA, GOPAL BHATIA, KISHANCHAND BHATIA, JAYSHREE BHATIA and MANDAKINI GAJARIA (collectively "Plaintiffs") entered into a business relationship as customers of American Express Bank, Ltd.

("AEB"), which was incorporated in the State of Connecticut with its principal place of business in New York, New York, and opened three separate joint accounts with such bank for the purposes of investment of Plaintiffs' funds by AEB (the "Accounts").

35.     Plaintiffs advised AEB that it wanted a low risk long term investment strategy.

## A.     Investment in Fairfield Sentry, Ltd.

36.     From November 2004 through June 2007, AEB invested Plaintiffs' funds in defendant FAIRFIELD SENTRY, LTD.

37.     AEB's relationship manager and officer, Surendran Menon ("Menon"), recommended such investment, as a "cash substitute," touting its apparent  history of stable and steady returns, and advised Plaintiffs that AEB had conducted extensive due diligence on FAIRFIELD SENTRY, LTD. before recommending the investment to its clients.

38.     Menon represented that the FAIRFIELD Defendants had achieved "mythical status" for the ability of FAIRFIELD SENTRY, LTD. to generate steady and consistent returns with low volatility.

39     AEB further advised Plaintiffs that FAIRFIELD SENTRY, LTD. would be part of the select few investments which would form the core of the Plaintiffs' portfolio, due to its consistent returns and the lack of available shares which would come into the market.

40.     AEB stressed that FAIRFIELD SENTRY. LTD. was a closed end fund, but because of AEB's reputation, AEB was able to convince the FAIRFIELD Defendants to accept the investments by AEB's customers.

41.     AEB represented to Plaintiffs that an investment in FAIRFIELD SENTRY, LTD. was highly sought after and Plaintiffs should not miss such an investment opportunity.

42.     Plaintiffs relied on representations made by AEB that it had conducted extensive due diligence on the FAIRFIELD Defendants and that an investment with FAIRFIELD SENTRY, LTD. would generate consistent returns with low volatility.

43.     At such time, AEB knew or should have known that Defendant FAIRFIELD SENTRY, LTD. invested a large proportion of its investors' funds with Madoff and BMIS.

44.     Reasonable due diligence, including typical quantitative analysis, would have established that FAIRFIELD SENTRY, LTD., Madoff and BMIS were involved in a fraudulent scheme and that the investment returns touted by AEB were not possible.

45.     Plaintiffs invested millions of dollars with AEB based upon AEB's misrepresentations that AEB had specially chosen, following AEB's own extensive due diligence, the safest investments for its customers, which constituted a "cash substitute."

46.     Instead AEB merely passed along, verbally and through documentation, the misrepresentations of the FAIRFIELD Defendants that FAIRFIELD SENTRY, LTD. was a low risk, long term investment.

47.     AEB omitted to advise Plaintiffs that AEB's recommendations were based on nothing but the propaganda printed and issued by the FAIRFIELD Defendants, which propaganda which was ultimately covering up the fraudulent Ponzi scheme led by Madoff and BMIS.

48.     The FAIRFIELD Defendants misrepresented through issued statements and other publications that FAIRFIELD SENTRY, LTD. was obtaining a steady stream of returns for its trading strategies, that they conducted extensive due diligence on investments and operated under complete transparency when, in fact FAIRFIELD SENTRY LTD. was controlled by Madoff and BMIS.

49.     From on or about November 2004 through February 2008, AEB charged Plaintiffs investment advisor fees on a quarterly basis, which fees were debited from the Accounts.

50.     On or about September 18, 2007, Defendant STANDARD CHARTERED PLC announced it had reached an agreement to acquire AEB.

51.     On or about February 2008, AEB was acquired in its entirety by STANDARD CHARTERED PLC.

52.     Thereafter, AEB was renamed STANDARD CHARTERED INTERNATIONAL (USA) LTD. ("STANDARD CHARTERED USA").

53.     The acquisition of AEB by STANDARD CHARTERED PLC included Plaintiffs' Accounts.

54.      As a result of the foregoing, STANDARD CHARTERED USA is a successor in interest to AEB, and as such, STANDARD CHARTER USA is responsible for all the material misrepresentations and omissions of AEB.

55.     After the acquisition of AEB by STANDARD CHARTERED PLC, Plaintiffs' funds continued to be invested by the STANDARD CHARTERED Defendants in FAIRFIELD SENTRY, LTD.

56.     From November 2004 through the first quarter 2008, when Plaintiffs asked the STANDARD CHARTERED Defendants, on several occasions, whether they should remain invested in FAIRFIELD SENTRY, LTD., the STANDARD CHARTERED Defendants advised Plaintiffs to remain in such investments, refrain from taking profits of year over year returns, all because there were no attractive opportunities in the markets to deploy the resulting cash and cash returns that would match the risk-reward ratio of FAIRFIELD SENTRY, LTD.

57.     The STANDARD CHARTERED Defendants continued to misrepresent to Plaintiffs that the investments in FAIRFIELD SENTRY, LTD. were a "cash substitute" and that there was little risk in leaving Plaintiffs' funds with FAIRFIELD SENTRY, LTD.

58.     The STANDARD CHARTERED Defendants omitted to advise the Plaintiffs, that their recommendation that Plaintiffs' funds remain in FAIRFIELD SENTRY, LTD., was made without making  any investigation and by relying solely on propaganda received from the FAIRFIELD Defendants.

59.     As of October 28, 2008, the investment by Defendant STANDARD CHARTERED USA in FAIRFIELD SENTRY, LTD. from Plaintiffs' STANDARD CHARTERED USA Account No. *71** totaled $2,986,910.24.

60.     As of October 28, 2008, the investment by Defendant STANDARD CHARTERED USA in FAIRFIELD SENTRY, LTD. from Plaintiffs' STANDARD CHARTERED USA Account *52** totaled $2,160,913.59.

61.     As of October 28, 2008, the investment by Defendant STANDARD CHARTERED USA in FAIRFIELD SENTRY, LTD. from Plaintiffs' STANDARD CHARTERED USA Account *74** totaled $196,406.20.

62.     As of October 28, 2008, the total principal from the Accounts invested by the Defendant STANDARD CHARTERED USA in FAIRFIELD SENTRY, LTD. amounted to the sum of $5,344,230.03.

63.     On October 28, 2008, Plaintiff JITENDRA BHATIA met with Menon, Plaintiffs' relationship manager and now an officer of the STANDARD CHARTERED Defendants, and instructed the STANDARD CHARTERED Defendants to immediately redeem all funds invested on behalf of Plaintiffs in FAIRFIELD SENTRY LTD., and to credit the returned proceeds to Plaintiffs' respective Accounts.

64.     On or about October 29, 2008, written instructions to redeem Plaintiffs' entire holdings in FAIRFIELD SENTRY, LTD. were signed by Plaintiffs.

65.     Menon advised Plaintiffs that their order would be placed by STANDARD CHARTERED USA in the November redemption cycle and returned to the Accounts within ten (10) business days from the last day of receipt of November instructions by FAIRFIELD SENTRY, LTD., which was November 14, 2008.

66.     On or about October 29, 2008, Plaintiffs, by letters of same date, confirmed their prior request of October 28, 2008 for the STANDARD CHARTERED Defendants to

immediately redeem all investments made in FAIRFIELD SENTRY, LTD. and to credit the proceeds to the respective Accounts.

67.     Although the STANDARD CHARTERED Defendants received the redemption order personally on October 28, 2008 and in writing on October 29, 2008, the STANDARD CHARTERED Defendants failed to transmit the request to FAIRFIELD SENTRY, LTD. until November 14, 2008.

68.     Upon information and belief, the STANDARD CHARTERED Defendants did not immediately notify FAIRFIELD SENTRY, LTD. of the redemption request on October 28, 2008, but instead waited until sometime in November, after consolidating several customers' redemption requests related to FAIRFIELD SENTRY, LTD. for the November redemption cycle in Bundle No. IBJ6R6IL.

69.     Although Plaintiffs directed redemption by the STANDARD CHARTERED Defendants as early as October 28, 2008, Plaintiffs did not receive the proceeds of such redemption.

70.     Despite several demands by Plaintiffs after October 28, 2008, the STANDARD CHARTERED Defendants failed to secure or seek redemption  of the funds invested in FAIRFIELD SENTRY, LTD.

71.     The FAIRFIELD Defendants failed to return such funds to Plaintiffs' Accounts and wrongly retained such funds.

72.     From November 2004 through October 2008, STANDARD CHARTERED USA charged Plaintiffs investment fees on a quarterly basis, which fees were debited from the Accounts.

73.     On or about February 2, 2009, at the Dubai office of the STANDARD CHARTERED Defendants, Plaintiff JITENDRA BHATIA met with W. Richard Holmes

("Holmes"), the co-Chair of STANDARD CHARTERED USA and Chief Executive Officer, Europe, for STANDARD CHARTERED PLC.

74.     Upon information and belief, prior to STANDARD CHARTERED PLC's acquisition of AEB, Holmes was the Chairman and Chief Executive Officer of AEB.

75.     At the February 2, 2009 meeting, Holmes admitted to Plaintiff JITENDRA BHATIA that in recommending FAIRFIELD SENTRY, LTD. as an investment, the STANDARD CHARTERED Defendants had done none of their own due diligence or investigations but instead had relied wholly upon representations made by the FAIRFIELD Defendants.

76.      Holmes further admitted that the STANDARD CHARTERED Defendants had not taken any legal action with respect to the rights of the STANDARD CHARTERED Defendants or their customers, including Plaintiffs, following the news of the Madoff scandal and the involvement of the FAIRFIELD Defendants.

**B.     Investment in Lloyds Bank Bonds**

77.     On or about May 15, 2008, the STANDARD CHARTERED Defendants purchased 2,000 bonds issued by Lloyds TSB, at $100 per share, on behalf of Plaintiffs (STANDARD CHARTERED Account No. *52**).

78.     On or about May 19, 2008, the STANDARD CHARTERED Defendants purchased 2,000 bonds issued by Lloyds TSB, at $100 per share, on behalf of Plaintiffs (STANDARD CHARTERED Account No. *71**).

79.     The bonds purchased by the STANDARD CHARTERED Defendants on behalf of the Plaintiffs are collectively referred to herein as the "Lloyds Bank Bonds".

80.     Plaintiffs invested in the Lloyds Bank Bonds on the recommendations of Menon and Mr. Biswaroop Barua, a member of the STANDARD CHARTERED BANK Fixed Income

Team based in Singapore ("Barua") that the Lloyds Bank Bonds were a low risk debt instrument consistent with Plaintiffs' long term investment strategy.

81.     In or about the middle of January 2009, Plaintiffs first learned that the Lloyds Bank Bonds had been converted to preferred shares.

82.     Upon information and belief, Lloyds TSB had announced to the STANDARD CHARTERED Defendants that the Lloyds Bank Bonds would be converted in or about the third week of December 2008.

83.     In making their recommendation to invest in the Lloyds Bank Bonds and thereafter, the STANDARD CHARTERED Defendants failed to disclose to Plaintiffs that the Lloyd's Bank Bonds were convertible instruments.

84.     The STANDARD CHARTERED Defendants also failed to disclose to Plaintiffs the risks involved in investing in a convertible instrument, as compared to the risks associated with a non-convertible bonds.

85.     The STANDARD CHARTERED Defendants further failed to disclose to Plaintiffs, in December 2008 or at any time thereafter, that Lloyds TSB had announced that it would be converting the Lloyds Bank Bonds from debt instruments to equity in the form of preferred shares.

86.     Upon information and belief, after the December 2008 announcement by Lloyds TSB of the conversion of the Lloyds Bank Bonds, other banks recommended to their clients that such clients sell Lloyds Bank Bonds to prevent further losses because the announcement indicated extreme financial distress and an uncertain future outlook for Lloyds TSB.

87.     In or about the time that Lloyds TSB announced the conversion of the Lloyds Bank Bonds in third week of December 2008, the Lloyds Bank Bonds were trading in the range of $65 – $70.  The prices have fallen sharply since.

88.     As a result of the STANDARD CHARTERED Defendants failure to properly advise Plaintiffs concerning the Lloyds Bank Bonds, Plaintiffs suffered significant losses which could have been prevented.

**AS AND FOR A FIRST CLAIM**
**(Violations of Section 10(b) of the Exchange Act and**
**Rule 10b-5 of the Securities and Exchange Commission Against All Defendants)**

89.     Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "88" as if fully set forth herein.

90.     This Claim is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

91.     Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiffs, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs.

92.     The purpose and effect of said scheme, plan, and unlawful course of conduct was among other things, to induce Plaintiffs to invest in FAIRFIELD SENTRY, LTD., which was tied to the fraud perpetuated by Madoff and BMIS.

93.     Defendants, pursuant to said scheme, plan and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, or participated in the preparation, issuance and distribution of deceptive and materially false and misleading statements to Plaintiffs.

94.     Plaintiffs, in ignorance of the false and misleading statements set forth above and the deceptive and manipulative devices and contrivances employed by Defendants, relied, to their detriment, on such misleading statements and omissions in investing in FAIRFIELD SENTRY, LTD.

95.     Plaintiffs have suffered substantial damages as a result of the wrongs alleged

herein in an amount to be proved at trial, but believed to be in excess of $5,672,230.03, plus

interest, fees, penalties and other costs.

96.     By reason of the foregoing, Defendants directly violated Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder in that they:  (a) employed devices,

schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state

material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; or (c) engaged in acts, practices, and a course of

business which operated as a fraud and deceit upon Plaintiffs in connection with the investments

in FAIRFIELD SENTRY, LTD.

### AS AND FOR A SECOND CLAIM

**(Violations of Section 20(A) of The Exchange Act**
**Against Defendants Standard Chartered PLC,  Fairfield Greenwich Group,**
**Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., Fairfield Greenwich**
**Advisors LLC,  Walter M. Noel, Jr., Peter Schmid, Jan Naess, Andreas Piedrahita,**
**Jeffrey H. Tucker,  Brian Francouer  and Amit Vijayvergiya)**

97.     Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through

"96" as if fully set forth herein.

98.     This Claim is asserted against Defendants STANDARD CHARTERED PLC,

FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH LIMITED, FAIRFIELD

GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC,  WALTER

M. NOEL, JR., PETER SCHMID, JAN NAESS, ANDREAS PIEDRAHITA, JEFFREY H.

TUCKER,  BRIAN FRANCOUER and AMIT VIJAYVERGIYA pursuant to Section 20(a) of

the Exchange Act, 15 U.S.C. §78t(a).

99.     Defendants STANDARD CHARTERED PLC acted as a controlling person

within the meaning of Section 20(a) of the Exchange Act, of  defendant STANDARD

CHARTERED USA by virtue of its 100% ownership and control of STANDARD

CHARTERED USA.

100.    Defendant STANDARD CHARTERED PLC influenced, directed and controlled defendant STANDARD CHARTERED USA with regard to its actions, representations and omissions set forth herein.

101.    By virtue of its 100% control of STANDARD CHARTERED USA, defendant STANDARD CHARTERED PLC had the ability to prevent the actions, misrepresentations and omissions committed herein.

102.    Defendants FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC,  WALTER M. NOEL, JR., PETER SCHMID, JAN NAESS, ANDREAS PIEDRAHITA, JEFFREY H. TUCKER,  BRIAN FRANCOUER  and AMIT VIJAYVERGIYA PLC acted as a controlling person within the meaning of Section 20(a) of the Exchange Act, of defendant FAIRFIELD SENTRY, LTD. by virtue of its ownership and control of FAIRFIELD SENTRY, LTD.

103.    Defendants FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC,  WALTER M. NOEL, JR., PETER SCHMID, JAN NAESS, ANDREAS PIEDRAHITA, JEFFREY H. TUCKER,  BRIAN FRANCOUER  and AMIT VIJAYVERGIYA influenced, directed and controlled defendant FAIRFIELD SENTRY, LTD., with regard to its actions, representations and omissions set forth herein.

104.    By virtue of its control of FAIRFIELD SENTRY, LTD., defendants FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC,  WALTER M. NOEL, JR., PETER SCHMID, JAN NAESS, ANDREAS PIEDRAHITA, JEFFREY H. TUCKER,  BRIAN FRANCOUER  and AMIT VIJAYVERGIYA had the ability to prevent the actions, misrepresentations and omissions committed herein.

105.   As a direct and proximate result of the wrongful conduct, Plaintiffs suffered an economic loss and damages in connection with the investment of their funds in an amount to be proven at trial, but believed to be in excess of $5,672,230.03, plus interest, fees, penalties and other costs.

## AS AND FOR A THIRD CLAIM
### Rescission under the Investment Advisers Act, 15 U.S.C. § 80b-1 et seq.
### (Against Defendant Standard Chartered USA)

106.   Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "105" as if fully set forth herein.

107.   Defendant STANDARD CHARTERED USA acted as an "investment adviser" to Plaintiffs pursuant to the Investment Advisers Act.

108.   By executing the Private Banking Services Agreement with AEB, and other agreements, Plaintiffs and defendant STANDARD CHARTERED USA entered into "investment adviser agreements" under the Investment Advisers Act.

109.   As investment advisers, defendant STANDARD CHARTERED USA was not permitted to "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client."  15 U.S.C. §80b-6(2).

110.   Defendant STANDARD CHARTERED USA breached its duties to Plaintiffs by engaging in a course of conduct in which they recklessly engaged in transactions, practices and a course of business which allowed a fraud to be perpetrated on Plaintiffs.

111.    Defendant STANDARD CHARTERED USA breached its duties by:

   a.   misrepresenting to Plaintiffs that the STANDARD CHARTERED Defendants conducted extensive due diligence on the FAIRFIELD Defendants and that an investment in FAIRFIELD SENTRY, LTD. would generate consistent returns with low volatility;

b.  failing to perform adequate due diligence, or to follow their own internal due diligence protocols, before investing Plaintiffs' funds in FAIRFIELD SENTRY, LTD.;

c.  publishing and releasing materials to Plaintiffs that contained false and misleading information of the care taken by Defendants with respect to Plaintiffs' funds, about the manner in which these assets were being invested, and of the value of these assets;

d.  investing Plaintiffs' funds in FAIRFIELD SENTRY, LTD. with inadequate diligence or monitoring;

e.  failing to monitor Plaintiffs' investments in FAIRFIELD SENTRY, LTD. on an continuous basis to any reasonable degree, or to comply with their own internal protocols for monitoring the funds which were ultimately entrusted to Madoff and BMIS;

f.  failing to take adequate steps to confirm the account statements of  FAIRFIELD SENTRY and related transactions, as well as periodic performance representations of FAIRFIELD SENTRY, LTD. by the FAIRFIELD Defendants;

g.  failing to properly process the redemption and return of Plaintiffs' funds after expressly acknowledging Plaintiffs' direction and agreeing to obtain redemption of the investments; and

h.  profiting at the expense of Plaintiffs by collecting quarterly investment fees;

i.  failing to disclose to Plaintiffs material facts regarding the convertible nature of the Lloyds Bank Bonds;

j.  failing to disclose to Plaintiffs the risks associated with investing in convertible bonds rather than non-convertible bonds in connection with the Lloyds Bank Bonds investments;

    k.   failing to disclose to Plaintiffs the material fact that Lloyds TSB had announced in

         December 2008 that it would be converting the Lloyds Bank Bonds; and

    l.   failing to disclose to Plaintiffs the material fact that Lloyds had converted the

         Lloyds Bank Bonds.

112.    Defendant STANDARD CHARTERED USA is liable for all damages sustained

by Plaintiffs, as a direct participant in the wrongs listed above.

113.    The purpose of the defendant STANDARD CHARTERED USA's conduct was to

enrich itself at Plaintiffs' expense.

114.    The aforementioned conduct by defendant STANDARD CHARTERED USA

was so reckless as to constitute a deceit or fraud upon Plaintiffs.

115.    Plaintiffs have been damaged as a result of defendant STANDARD

CHARTERED USA's breach of their duties under the Investment Advisers Act.

116.    As a result, Plaintiffs are entitled to rescission of their investment adviser

agreements with the defendant STANDARD CHARTERED USA and to recover all fees and

commissions paid in connection to Plaintiffs' investments in FAIRFIELD SENTRY, LTD.

### AS AND FOR A FOURTH CLAIM
**(Breach of Fiduciary Duty Against the Standard Chartered Defendants)**

117.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through

"116" as if fully set forth herein.

118.    Plaintiffs entrusted their funds to the STANDARD CHARTERED Defendants,

which owed fiduciary duties to Plaintiffs.

119.    As investment management advisors, the STANDARD CHARTERED

Defendants knew or should have known how to perform their duties including, but not limited to

the monitoring of the safety and performance of Plaintiffs' funds in a prudent and professional

manner.

120.     The STANDARD CHARTERED Defendants breached their fiduciary duties to Plaintiffs and acted in reckless disregard of those duties by:

a.      misrepresenting to Plaintiffs that the STANDARD CHARTERED Defendants conducted extensive due diligence on the FAIRFIELD Defendants and that an investment in FAIRFIELD SENTRY, LTD. would generate consistent returns with low volatility;

b.      failing to exercise generally the degree of prudence, caution and good business practices that would be expected of reasonable investment professionals overseeing client funds;

c.      publishing and releasing materials to Plaintiffs that contained false and misleading information of the care taken by Defendants with respect to Plaintiffs' funds, about the manner in which these assets were being invested, and of the value of these assets;

d.      failing to act with reasonable care in ascertaining that the information set forth in the Memorandum and other written materials provided to Plaintiffs  was accurate and did not contain false and misleading statements or omissions of material facts;

e.      failing to take reasonable steps to oversee that the investment of the assets of Plaintiffs were made and maintained in a prudent and professional manner;

f.      failing to investigate or perform due diligence or review as to the actual relationship of Madoff and BMIS with FAIRFIELD SENTRY, LTD. and the underlying basis for the investments and performance claimed by the FAIRFIELD Defendants, Madoff and BMIS;

g.      failing to perform reasonable and adequate due diligence in the selection of, and continuing selection of the FAIRFIELD Defendants, Madoff and BMIS , including the roles of Madoff and BMIS;

h.      allowing investments of Plaintiffs' funds in the Madoff and BMIS Ponzi scheme through the FAIRFIELD Defendants feeder fund without adequate and reasonable due diligence, auditing or monitoring;

     i.       failing to monitor or audit the FAIRFIELD Defendants, Madoff and BMIS on an ongoing basis to any reasonable degree;

     j.       failing to take reasonable steps to preserve the value of Plaintiffs' investments;

     k.       failing to properly process and secure the redemption from FAIRFIELD SENTRY, LTD. and return Plaintiffs' funds after expressly agreeing to redeem the investment;

     l.       failing to disclose to Plaintiffs material facts regarding the convertible nature of the Lloyds Bank Bonds;

     m.       failing to disclose to Plaintiffs the risks associated with investing in convertible bonds rather than non-convertible bonds in connection with the Lloyds Bank Bonds investments;

     n.       failing to disclose to Plaintiffs the material fact that Lloyds TSB had announced in December 2008 that it would be converting the Lloyds Bank Bonds; and

     o.       failing to disclose to Plaintiffs the material fact that Lloyds had converted the Lloyds Bank Bonds.

     121.     As a direct and proximate result of the STANDARD CHARTERED Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages and are entitled to recovery of such damages from the STANDARD CHARTERED Defendants, jointly and severally, in an amount to be proven at trial, but believed to be in excess of $5,672,230.03, plus interest, fees, penalties and other costs, as well as a return of all fees paid to the STANDARD CHARTERED Defendants.

     122.     Because the STANDARD CHARTERED Defendants willfully and wantonly disregarded Plaintiffs' rights in breaching their fiduciary duties, Plaintiffs are entitled to punitive damages.

**AS AND FOR A FIFTH CLAIM**
**(Gross Negligence Against The Standard Chartered Defendants)**

     123.     Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "122" as if fully set forth herein.

124.    As investment managers with discretionary control over the assets entrusted to them by Plaintiffs, the STANDARD CHARTERED Defendants owed Plaintiffs a duty to manage and monitor the investments of Plaintiffs with reasonable care.

125.    Defendants breached this duty by failing to:

a.    Take all reasonable steps to ensure that the investment of Plaintiffs' funds were made and maintained in a prudent and professional manner;

b.    Take all reasonable steps to preserve the value of Plaintiffs' investment;

c.    Perform all necessary and adequate due diligence or review;

d.    Exercise generally the degree of prudence, caution and good business practices that would be expected of any reasonable investment professional; and

e.    Properly process the redemption and return Plaintiffs' funds to the Accounts in a diligent manner after expressly agreeing to redeem the investment;

f.    failing to disclose to Plaintiffs material facts regarding the convertible nature of the Lloyds Bank Bonds;

g.    failing to disclose to Plaintiffs the risks associated with investing in convertible bonds rather than non-convertible bonds in connection with the Lloyds Bank Bonds investments;

h.    failing to disclose to Plaintiffs the material fact that Lloyds TSB had announced in December 2008 that it would be converting the Lloyds Bank Bonds; and

i.    failing to disclose to Plaintiffs the material fact that Lloyds had converted the Lloyds Bank Bonds.

126.    As a direct and proximate result of Defendants' gross negligence, Plaintiffs and have suffered damages and are entitled to such damages from Defendants, jointly and severally, in an amount to be proven at trial, but believed to be in excess of $5,672,230.03, plus interest, fees, penalties and other costs, as well as a return of all fees paid to Defendants.

## AS AND FOR A SIXTH CLAIM
### (Unjust Enrichment and Constructive Trust Against All Defendants)

127.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "126" as if fully set forth herein.

128.    Defendants financially benefited from their unlawful acts which caused Plaintiffs to suffer injury and monetary loss.

129.    As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner and each Defendant should pay its own unjust enrichment to Plaintiffs.

130.    Plaintiffs are entitled to the establishment of a constructive trust impressed on the benefits to Defendants from their unjust enrichment and inequitable conduct.

## AS AND FOR A SEVENTH CLAIM
### (Common Law Fraud Against All Defendants)

131.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "130" as if fully set forth herein.

132.    Accordingly, Plaintiffs suffered compensatory damages in an exact amount to be determined at trial, but believed to be in excess of $5,344,230.03, plus interest, fees, penalties and other costs.

133.    In committing the fraud as alleged, the Defendants acted in reckless disregard for the truth, in conscious disregard for Plaintiffs' rights, and with malice and oppression so as to justify an award of punitive damages.

## AS AND FOR A EIGHTH CLAIM
### (Specific Performance Claim Against All Defendants)

134.    Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "133" as if fully set forth herein.

135.    Plaintiffs have no adequate remedy of law.

136.     Based upon the foregoing,  Plaintiffs are entitled to specific performance to obtain redeemed funds due to their Accounts.

## AS AND FOR A NINTH CLAIM
### (Conversion Against the Fairfield Defendants)

137.     Plaintiffs repeat and reallege the allegations as set forth in paragraphs "1" through "136" as if fully set forth herein.

138.     The money and property taken and retained by the FAIRFIELD Defendants were at all times property of the Plaintiffs.

139.     Plaintiffs have requested repayment of their funds.

140.     The FAIRFIELD Defendants have not complied with this demand for the return of the investment, and upon information and belief, could and should have returned the redeemed funds in or about November 2008.

141.     The FAIRFIELD Defendants' retention of Plaintiffs' property is intentional, without permission or justification, and constitutes conversion of Plaintiffs' property.

142.     Plaintiffs are entitled to immediate possession of these funds.

143.     The STANDARD CHARTERED Defendants have failed to take action and have been complicit as to wrongful conversion by the FAIRFIELD Defendants, leaving Plaintiffs no alternative but to assert this claim and no adequate remedy of law.

144.     Plaintiffs' property had a value in an exact amount to be determined at trial, but believed to be in excess of $5,344,230.03, plus interest, fees, penalties and other costs.

145.     As a result of the foregoing conversion, Plaintiffs are entitled to the return of (a) all funds wrongfully converted by the FAIRFIELD Defendants with interest thereon or (b) compensatory  damages in an exact amount to be determined at trial, but believed to be in excess of $5,344,230.03, plus interest, fees, penalties and other costs.

**WHEREFORE,** Plaintiffs respectfully request the following relief:

(a)      Rescission of all contractual relationships between Plaintiffs and the STANDARD CHARTERED Defendants and a return of all principal as well as fees paid by Plaintiffs to STANDARD CHARTERED Defendants;

(b)      Compensatory, consequential, and general damages in an amount to be determined at trial;

(c)      Such temporary, preliminary and permanent injunctive relief, including imposition of a constructive trust, as is appropriate to preserve and protect the assets of the Plaintiffs;

(d)      Directing the Defendants to return and deliver to Plaintiffs all funds and property of the Plaintiffs that the FAIRFIELD DEFENDANTS wrongfully converted;

(e)      Specific performance by all defendants with respect to the redemption of Plaintiffs' funds together with an accounting by the Defendants relating to such funds;

(f)      Disgorgement and restitution of all earnings, profits, compensation and benefits received by the Defendants as a result of their unlawful acts and practices;

(f)      Punitive damages in the discretion of the Court on account of Defendants' fraudulent, willful, wanton and reckless disregard of Plaintiffs' rights;

(g)      Costs and disbursements of the action;

(h)      Contractual and judicial interest upon all economic damages;

(h)      Reasonable attorneys' fees where appropriate; and

(i)      Such other and further relief as this Court may deem fair, just and proper.

Dated: New York. New York
         March 16, 2009                    CROWELL & MORING LLP

                                           By: *s/William M. O'Connor*
                                           William M. O'Connor, Esq.
                                           Evelyn H. Seeler, Esq.
                                           *Attorneys for Plaintiffs Jitendra Bhatia,*
                                           *Gopal Bhatia, Kishanchand Bhatia,*
                                           *Jayshree Bhatia and Mandakini Gajaria*
                                           590 Madison Avenue, 20th Fl.
                                           New York, New York 10022
                                           (212) 223-4000
                                           E-mail: woconnor@crowell.com
                                           E-mail: eseeler@crowell.com